IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>DANIEL CHHOUN, et al.,<br><br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:06-CR-460-TC |

In preparation for the four-week trial in this criminal conspiracy case that is currently scheduled to begin March 10, 2008, the court held an all-day hearing on December 10, 2007, to address defendant motions concerning admissibility of gang expert witness testimony, co-conspirator statements, Rule 404(b) evidence, and concerning the destruction of allegedly exculpatory evidence. For the reasons stated throughout the hearing and set forth below, the court holds as follows:

* * * *

**ADMISSIBILITY OF GANG EXPERT WITNESS TESTIMONY**

This matter came before the court on Defendant Vongmany Mathipannha's June 27, 2007 Motion In Limine to Prohibit Testimony of Los Angeles Gang Expert John Choo (#433) (which motion was joined by many of the Defendants).[1] But Mr. Choo apparently was not available, and

---

[1]Motions to join Vongmany Mathipannha's motion have been filed by the following defendants: Chantha Chhat (Dkt # 448); Phoukham Chanthavong (Dkt # 476); Samnang Yong

on December 4, 2007, six days before the Daubert hearing[2] scheduled by the court, the United

States sent out its Notice of Intent to Introduce Expert Testimony of Jim Kang (Dkt # 544).  The

Notice stated that Mr. Kang, from the Elk Grove, California Police Department, "will testify

relative to Asian gangs and organized crimes."  (Id. at 1.)  Attached to the Notice was Mr. Kang's

curriculum vitae, but the Notice did not contain other information required[3] under Federal Rule

of Criminal Procedure 16(a)(1)(G) (requiring disclosure of written summary of expert's

testimony, including opinions, the bases and reasons for those opinions, and the witness's

qualifications).  The Notice also stated that "Detective Bruce Champagne, formerly from the

West Valley Police Department, will also be present to testify at the hearing."  (Id. at 2.)  Nothing

further was provided by the government.

　　　The court began with Detective Champagne's testimony.  The government offered

Detective Champagne as a hybrid witness who would testify at trial about facts within his

personal knowledge (as investigator on the case before the court) as well about his expert

opinions regarding gangs.  First he testified about his expertise in gangs, particularly South East

Asian gangs, in general terms.  Then he began to testify about the characteristics of the Tiny

Oriental Posse (TOP) gang in Utah, of which the Defendants are alleged to be members.  He then

identified each of the Defendants as a member of TOP or what he alleges is a closely-aligned

gang, the Baby Regulators.  He also testified about the rival of TOP, called OLG (Original

────────────────

(Dkt # 480); Alan Ratrisouk (Dkt # 499); and Anousak Kaykeo (Dkt # 503).

　　　[2]See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

　　　[3]Disclosure of this information was required under Rule 16(a)(1)(G) because numerous defendants specifically requested the information seven to nine months before.  (See Dkt #s 284, 285, 286, 288, 299, 310, 323, 370, and 389.)

Laotian Gangsters).  He provided opinions about whether each Defendant was a member of TOP or the Baby Regulators.

When defense counsel began cross-examining Detective Champagne, it became clear to the court that the finding of whether the witness was an expert qualified to identify each of the Defendants as a member or associate of TOP[4] required foundation that the government was not prepared to provide at that time.  Moreover, not all of the information requested by the Defendants under Rule 16(a)(1)(G) had been provided, so cross-examination would not have been complete.  There appeared to be no objection to Detective Champagne's overall expertise regarding gangs.  But the Defendants were not willing to concede his expertise with respect to the TOP gang and its specific members and associates, particularly because they had not received the basis for his opinion about why a particular defendant was a member or associate of TOP. Accordingly, the court deferred ruling on his specific expertise regarding TOP and its members and associates until the government has provided proper notice of its expert testimony and has presented the majority of its case-in-chief, at which point it will then offer the testimony of Detective Champagne.

As for Jim Kang, the government's gang expert witness, the court declined to have him testify regarding his expertise in gangs, because the Defendants had practically no notice about his testimony (the government provided only partial information about him, and that information was provided less than a week before the Daubert hearing).

To facilitate discovery regarding the two expert witnesses, and to facilitate the resolution

---

[4]Detective Champagne testified that "member" and "associate" were essentially terms-of-art that had specific meaning in the world of TOP.

3

of other outstanding issues, the parties and the court agreed to the schedule and deadlines listed below.

* * * *

## ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS

The court held a <u>James</u> hearing[5] to review the admissibility under Federal Rule of Evidence 801(d)(2)(E) of the co-conspirator statements proffered by the government.  During the hearing, it became clear that some of the proffered "statements" might be admissible as non-hearsay for reasons other than the rule in 801(d)(2)(E) and are not necessarily being offered for the truth of the matter.  Further, the court found that the pre-trial hearing order of proof presented some logistical problems.

Accordingly, the court has decided that it must rule on the statements, to the extent they are co-conspirator statements, during the trial, where context will be important.  "[I]n certain circumstances where it is not 'reasonably practicable to require the showing to be made before admitting the evidence, the court may admit the statements subject to being connected up.'" <u>United States v. Petersen</u>, 611 F.2d 1313, 1329-31 (10th Cir. 1979) (adopting <u>James</u> procedure and noting propriety of deferring ruling on admissibility of co-conspirator statements until after the government's presentation at trial of case-in-chief); <u>see also</u> <u>United States v. Roberts</u>, 14 F.3d 502, 514 (10th Cir. 1993) (noting that there is no "fixed formula to govern the <u>James</u> prophylaxis" and that order of proof "remains within the discretion of the trial court based on the particular configuration of the government's evidence and the constraints of a multi-defendant

---

[5]<u>See</u> <u>United States v. James</u>, 590 F.2d 575 (5th Cir. 1979).

trial"). In this case, the court's chosen order of proof should not present the problem a <u>James</u> hearing was meant to avoid (that is, the prejudice recognized in <u>James</u> is not necessarily present here because the evidence may come in against other defendants anyway). <u>See, e.g.</u>, <u>United States v. Urena</u>, 27 F.3d 1487, 1490-91 (10th Cir. 1994) (noting that <u>James</u> hearing is strongly preferred procedure, but is not required, and, absent abuse of discretion, court may rule on admissibility during trial in a manner that prevents prejudice to the defendant).

On another note, the court reiterates its ruling during the hearing that the government may not present any new <u>James</u> statements against the named Defendants. The time for doing so has passed.

But the same rule does not apply to Rodney Liti, whom the government anticipates adding to the indictment in early January 2008. Mr. Liti, who was indicted in a separate case in this district (Case No. 2:07-CR-239-TC), participated in the hearing with the understanding that he would soon be a named defendant in this case. But the government has not yet provided any notice of potential <u>James</u> statements in Mr. Liti's case. Accordingly, the court hereby **ORDERS** that once Mr. Liti is added to the indictment, **the government must present its notice of potential <u>James</u> statements related to Mr. Liti (if any) no later than five (5) days after the superseding indictment is filed**. Mr. Liti may file an **opposition to such proposed co-conspirator statements no later than five (5) days after the government files its notice** of proposed co-conspirator statements. As with the other co-conspirator statements, issues will be resolved at trial.

* * * *

## ADMISSIBILITY OF 404(b) AND ASSOCIATION EVIDENCE

During the hearing, the court addressed the motions and objections that were pending at the time.  The court noted that some defendants, against whom the government was offering 404(b) and association evidence, had not objected.  Those defendants stated that the government had not provided complete notice of the 404(b) evidence and so an objection could not be formed until full disclosure had been made.   Accordingly, for those reasons and as stated by the court during the hearing, the government is **ORDERED** to file an updated pleading providing full disclosure of potential 404(b) evidence (as discussed during the hearing) **no later than Friday, January 11, 2008.**  In that pleading, the government must describe each of the crimes (and provide dates as well) to explain the means, how it is admissible, and its purpose.

A **hearing on the 404(b) evidence** disclosed by the government will be held on **Monday, February 4, 2008, at 2:30 p.m.**   Defendant objections may be voiced at the hearing.

As for the motions and objections set for hearing that day, the court refers the parties to the hearing transcript (which will be available soon) for a full description of how the court ruled. A written order will follow at a later date.

* * * *

## MOTIONS RELATING TO DESTRUCTION OF
## ALLEGED EXCULPATORY EVIDENCE

Argument on motions relating to destruction of alleged exculpatory evidence was deferred based on the involved parties' request for time to follow up on new information and unresolved matters that may affect the status of the motions.  Those motions are Defendant Samnang Yong's Motion to Suppress Destroyed Evidence (Dkt # 505), and Defendant Bryan

Chhoun's Motion to Dismiss and/or for Other Relief for Destruction of Exculpatory Evidence

(Dkt # 377). **The court hereby re-sets a hearing on these two motions for January 10, 2008,**

**at 9:00 a.m.**

\* \* \* \*

## SCHEDULE AND DEADLINES[6]

**December 21, 2007:**

- Defendants shall serve upon the government their written requests under Rule 16(a)(1)(G), asking for the basis for both gang experts' opinions on Asian gangs, TOP in general, and why a specific defendant belongs to or is associated with TOP.

- Each Defendant may file a request for documents listed in the curriculum vitae of either expert witness.  (If the document has already been produced by the government, the government may list the Bates numbers instead of providing a hard copy of the document(s).)

- Finally, based on remarks made by some defense counsel, the court hereby orders that any Defendant who intends to file a motion under Bruton v. United States, 391 U.S. 123 (1968), should file such motion no later than December 21, 2007, and should identify each statement the Defendant believes runs afoul of Bruton and state why it violates the rule in Bruton.

---

[6]**PLEASE NOTE: Some deadlines have changed since the hearing.  To the extent there are inconsistencies between what was stated during the hearing and what is written in this Order, the Order controls.**

7

**January 10, 2008, at 9:00 a.m.:**

- The court will hold a hearing on Defendant Samnang Yong's Motion to Suppress Destroyed Evidence (Dkt # 505), and Defendant Bryan Chhoun's Motion to Dismiss and/or for Other Relief for Destruction of Exculpatory Evidence (Dkt # 377).

**January 11, 2008:**

- The United States must respond to Defendants' requests for expert witness information.

- In addition, the government shall produce any written information required to be produced under Rule of Criminal Procedure 26.2(a). That includes any documents that the two expert witnesses refer to or rely upon in reaching their opinions. For any document meeting that description that has already been produced, the government may simply reference it by Bates number.

- As noted above, the government shall file an updated pleading providing full disclosure of potential 404(b) evidence.

**February 4, 2008, at 2:30 p.m.:**

- The court will hold a hearing concerning the 404(b) evidence disclosed by the government on January 11, 2008. The Defendants affected by the government's updated disclosure may voice their objections at the hearing.

**February 11, 2008:**

- The government must disclose its witness list by this date.

- The government must disclose information required by the Jenks Act, 18 U.S.C.

§ 3500.

- The government shall provide each Defendant with a disc that will contain the government's proposed exhibits (with a Bates number stamped on it) and a log matching Bates number(s) to each exhibit.  The government must make sure electronic exhibits are compatible with court equipment in the jury room.

**February 18, 2008:**

- Any motion in limine regarding evidence proposed to be used **by either party** shall be filed, along with a memorandum in support, in which the filing party should be as specific as possible about the grounds for the position that the particular evidence is not admissible.

**February 25, 2008:**

- All briefs in opposition to pending motions in limine are due.

- Proposed jury instructions are due.  The parties are directed to meet and confer and stipulate where possible on jury instructions.  Where the parties disagree, note the disagreement and submit the proposed instruction the party prefers.  Also submit limiting instructions for use by the court during trial (for example, regarding 404(b) and association evidence).

- Proposed voir dire is due.  Regarding selection of the jury, include a discussion about whether an anonymous jury is needed; in the discussion, include an explanation of why or why not.  Parties may also submit jury selection proposals at this time if they wish.

9

**March 6-7, 2008, at 9:00 a.m.**:

- The court will hold a hearing to follow up on unresolved issues relating to the motions in limine and expert witnesses.  At that hearing, the court will rule on the admissibility of the general opinions of Detective Champagne and Jim Kang.  As noted above, the court will defer ruling on specific opinions about the individual Defendants until the government has presented its foundational fact witnesses at trial.

\*   \*   \*   \*

SO ORDERED this 20th day of December, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

10